AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

_____ Southern _____ DISTRICT OF _____ New York _____

DR. DAVID BEST

**SUMMONS IN A CIVIL CASE**

V.

PUBLICIS HEALTHCARE COMM. GROUP, INC.,
SAATCHI & SAATCHI HEALTHCARE
COMMUNICATIONS, INC. f/k/a HEALTHCARE
RESOURCES GROUP, INC., BESTMED, INC.,
SAATCHI & SAATCHI NORTH AMERICA, INC

CASE NUMBER

**05 CV 7375**

**JUDGE BAER**

TO: (Name and address of defendant)

Publicis Healthcare Communications Group,  1675 Broadway, New York, New York 10019;
Saatchi & Saatchi Healthcare Communications Inc., 375 Hudson Street, New
York, New York 10014; BestMed, Inc., 375 Hudson Street, New York, New York
10014; Saatchi & Saatchi North America, Inc., 375 Hudson Street, New York, New
York 10014

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Harry W. Lipman, Esq., Rottenberg Lipman Rich, P.C., 369 Lexington Avenue, 15th
Floor, New York, New York 10017

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this
summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period
of time after service.

**J. MICHAEL McMAHON**

AUG 19 2005

CLERK

DATE

_Marcos Quintero_

(BY) DEPUTY CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X

DR. DAVID BEST,

                  Plaintiff,

       -against-

PUBLICIS HEALTHCARE COMMUNICATIONS
GROUP, INC., SAATCHI & SAATCHI HEALTHCARE
COMMUNICATIONS, INC. f/k/a HEALTHCARE
RESOURCES GROUP, INC., BESTMED, INC.,
SAATCHI & SAATCH NORTH AMERICA, INC.,

                  Defendants.

--------------------------------------------------------------- X

**05 CV 7375**

:   **COMPLAINT**

:   (Jury trial demanded)

:   **JUDGE BAER**

:   RECEIVED

:   AUG 1 9 2005

:   U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, Dr. David Best ("Dr. Best"), by his counsel, Rottenberg Lipman Rich,

P.C., as and for his complaint against defendants, alleges as follows:

<u>NATURE OF THE ACTION</u>

1.     Through the course of 17 years working for defendants in the medical

education business, Dr. Best achieved marked success. Indeed, in 1995, Saatchi & Saatchi

Healthcare Communications, Inc. ("Saatchi & Saatchi") thought well enough of Dr. Best to

identify its medical communication company with him by naming it "BESTMED, Inc."

("BESTMED").

2.     Following the purchase of Saatchi & Saatchi's parent by French-based

Publicis SA in 2000, BESTMED came under the control of Publicis Healthcare Communications

Group, Inc. ("Publicis Healthcare").

3.     In April 2005, as the culmination of an effort to destroy Dr. Best's position

at BESTMED and in furtherance of defendants' refusal to honor Dr. Best's written employment

agreement, defendants Publicis Healthcare, Saatchi & Saatchi and BESTMED terminated Dr.

Best, fabricating justifications that are demonstrably false.

       4.      Not only have such defendants dishonored their obligations to compensate

Dr. Best hundreds of thousands of dollars in bonuses and severance pay pursuant to his

employment contract and severance pay plan, but they have refused to reimburse him well over

$100,000 for business expenses he paid for the benefit of defendants and their customers –

expenses which, upon information and belief, such customers were billed and have paid.

THE PARTIES

       5.      Dr. Best is an individual who resides at One Irving Place, #V-29D, in the

City, County and State of New York.  Dr. Best has considerable experience, and has developed a

considerable reputation in the niche medical education or "Med Ed" field, which performs target

marketing of pharmaceuticals and medical products and devices to doctors and hospitals.  Dr.

Best obtained a medical degree from the Temple University School of Medicine in 1979 and a

master's degree in business administration from the Baruch College School of Business in 1988.

       6.      Publicis Healthcare, formerly or also known as Publicis Healthcare Group,

Inc., upon information and belief is a Delaware corporation with its principal place of business

located at 1675 Broadway in the City, County and State of New York.  Upon information and

belief, Publicis SA formed Publicis Healthcare in or around 2003 to provide a single corporate

umbrella for a number of companies providing healthcare communications and marketing

services.

       7.      Saatchi & Saatchi is a New York corporation with its principal place of

business located at 375 Hudson Street in the City, County and State of New York.  Upon

- 2 -

information and belief Saatchi & Saatchi was formerly known as, or is the successor in interest

to, Healthcare Resources Group, Inc. ("Healthcare Resources"). Healthcare Resources was a

New York corporation and a wholly-owned subsidiary of Saatchi & Saatchi plc with its principal

place of business located at 375 Hudson Street in the City, County and State of New York. As

explained herein, Healthcare Resources was the signatory to Dr. Best's Employment Agreement.

      8.    BESTMED upon information and belief is or was a New York corporation

with its principal place of business located at 345 Hudson Street in the City, County and State of

New York. Upon information and belief, BESTMED is now either a division or wholly-owned

subsidiary of Publicis Healthcare or Saatchi & Saatchi.

      9.    Saatchi & Saatchi North America, Inc. ("Saatchi & Saatchi North

America") upon information and belief is a Delaware corporation with its principal place of

business located at 375 Hudson Street in the City, County and State of New York, and is the

administrator of the Saatchi & Saatchi North America Severance Pay Plan.

<u>JURISDICTION AND VENUE</u>

      10.    This Court has subject-matter jurisdiction over this action pursuant to 28

U.S.C. § 1331, by virtue of Dr. Best's claims for relief pursuant to ERISA, 29 U.S.C. §§

1132(a)(1)(B), 1132(e)(2) and (f) and pursuant to the Lanham Act, 15 U.S.C. § 1125(a) and (c).

      11.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 29 U.S.C.

§§ 1132(e)(2) in that all defendants reside in New York State and a substantial part of the events

or omissions giving rise to the claims herein occurred in the Southern District of New York.

- 3 -

Dr. Best Founds and Develops "BESTMED"

12.     As a medical doctor, Dr. Best has had an important advantage in developing unique and highly successful advertising and marketing campaigns and strategies in the highly competitive field of pharmaceutical marketing.

13.     Dr. Best began working for the long-established advertising agency Klemtner Advertising Inc. ("Klemtner") in 1982 in the position of Medical Director.  Dr. Best rapidly advanced at Klemtner and was promoted to Vice President in 1983 and Senior Vice President in 1984.

14.     In 1989, Dr. Best left Klemtner and joined Bristol-Myers Squib ("BMS"), where he developed and supervised a large group of medical science liaisons, or "MSLs," providing marketing, educational and training services for BMS's products.  MSLs are scientifically credentialed (MD, PharmD, PhD) personnel who provide highly skilled educational, service and product support to doctors and hospitals.

15.     In 1995, Dr. Best was recruited back to Klemtner for the purpose of founding and growing a stand-alone company in the quickly expanding field of medical education and marketing.  Dr. Best and Klemtner agreed to associate the company closely with Dr. Best's established reputation in the field and, as a result of that strategy, named the company "BESTMED."  By this time, Klemtner had joined the Saatchi & Saatchi family of media and marketing companies.

16.     Dr. Best started as BESTMED's first employee and grew BESTMED from a company with no existing revenue and no employees into a company with more than $10 million in annual revenue and approximately 85 full- and part-time employees as of 2004.

17.    While Dr. Best was employed at BESTMED, Dr. Best and BESTMED grew to have substantial overlap in image and identity.  Dr. Best and BESTMED developed a reputation for providing extremely effective and high quality medical education and marketing services.  Customers and others in the industry closely associated BESTMED with Dr. Best. Customers knew that Dr. Best had founded BESTMED and exercised significant control over the creative and business direction of BESTMED, including BESTMED's reputation for providing effective, cutting edge marketing services.  From time to time, customers expressed the belief that BESTMED was owned by Dr. Best or otherwise that BESTMED was "Dr. Best's company."

<u>The Employment Agreement</u>

18.    On or about May 7, 1998 Saatchi & Saatchi (under the name of its predecessor in interest, Healthcare Resources) entered an agreement with Dr. Best formalizing Dr. Best's employment as President of BESTMED (the "Employment Agreement").

19.    The Employment Agreement provides that Saatchi & Saatchi will compensate Dr. Best with a base salary plus bonuses consisting of  a minimum annual performance bonus of $70,000 once BESTMED achieved defined "Base Revenues" and escalating "Bonus Percentages" paid if and to the extent that BESTMED achieved certain benchmark revenues above the Base Revenues.

20.    The Employment Agreement provides that such bonuses are to be paid within 90 days of the end of Saatchi & Saatchi's fiscal year.   At all times relevant hereto Saatchi & Saatchi followed a calendar fiscal year.

- 5 -

21.     The Employment Agreement also provides that if Dr. Best is terminated without cause during any fiscal year, Dr. Best will nevertheless receive the bonus otherwise payable with respect to that fiscal year.

22.     The Employment Agreement further provides that Dr. Best is entitled to participate in employee benefit plans maintained for BESTMED employees.  Accordingly, Dr. Best is eligible to participate in the severance plan maintained by Saatchi & Saatchi North America for the benefit of employees of affiliated companies.  Saatchi & Saatchi North America's severance plan is memorialized in a plan document entitled "Saatchi & Saatchi North American Severance Pay Plan" (the "Severance Plan").

23.     The Employment Agreement provides that Dr. Best is entitled to certain perquisites, including four weeks of vacation annually.

24.     The Employment Agreement provides that Dr. Best is entitled to reimbursement of reasonable business expenses incurred in connection with the performances of his services thereunder.

25.     The Employment Agreement provides that it may be terminated by either party "for any reason upon thirty (30) days' written notice given to the other party."

26.     During Dr. Best's tenure at BESTMED, none of the defendants ever gave Dr. Best written notice of termination of the Employment Agreement.

### Dr. Best Fully Performed Under the Employment Agreement

27.     Dr. Best fully performed all his responsibilities under the Employment Agreement.  As required by the Employment Agreement, Dr. Best devoted his full time and

- 6 -

attention to developing BESTMED; he accepted and fully performed all assignments given to him by Saatchi & Saatchi and he used his best efforts to promote and enhance BESTMED's business. As set forth above, Dr. Best's efforts resulted in substantial growth and financial success for BESTMED.

28. During 2004, for example, BESTMED was generating gross revenues that exceeded projected revenues by almost 90%. As explained below, such revenues were materially impaired due to defendants' improper reallocation of BESTMED revenues to other related entities without adequate consideration to BESTMED. Nevertheless, on information and belief, BESTMED's total 2004 revenues exceeded target revenues by approximately 50%.

29. Numerous emails and memoranda sent internally among the defendants and Dr. Best attest to his skillful leadership and solid performance at BESTMED.

**Defendants Reorganize BESTMED, Wrongfully Terminate
Dr. Best and Fail to Pay Dr. Best
in Accordance with the Employment Agreement**

30. Upon information and belief, as a result of Publicis's acquisition of Saatchi & Saatchi, defendants initiated a corporate restructuring that resulted in the downsizing of BESTMED and the marginalization of Dr. Best's responsibilities.

31. Upon information and belief, for several months prior to April 19, 2005, Linda Szyper, the President of the Publicis Medical Education Group, and others, took actions to transfer or terminate BESTMED employees, to transfer BESTMED accounts and to scale back BESTMED's role within Publicis's group of healthcare marketing companies. Among other things, BESTMED's MSL group was transferred to Scientific Oriented Solutions, BESTMED's continuing medical education group was transferred to Publicis's Discovery Institute of Medical

- 7 -

Education, BESTMED's high volume meeting business group was transferred to Publicis's Chicago office and BESTMED's meeting planners were partially transferred to Chicago.

      32.    The dismantling of BESTMED's revenue-generating lines of business was done in total derogation of BESTMED's independent corporate existence and the contractual obligations that defendants had to Dr. Best. BESTMED did not receive adequate consideration for the transfer of its business lines and the valuable corporate opportunities that those businesses represented to BESTMED.

      33.    Dr. Best complained to defendants that BESTMED's revenues would be negatively affected by the restructuring. In response, Ms. Szyper agreed that BESTMED employees would be compensated for any new MSL contracts that BESTMED originated for defendants. Ms. Szyper agreed that BESTMED employees would receive a commission of 1% of the revenue of any MSL contract generated by BESTMED for any of defendants or the affiliates (the "MSL Agreement"). Nevertheless, defendants would soon refuse to honor the MSL Agreement.

      34.    As part of the restructuring, defendants endeavored to reduce payroll expenses, even though, in many instances, that meant refusing to honor employment agreements that were entered into prior to the Publicis acquisition.

      35.    In early 2005, defendants informed Dr. Best that they would not pay him the bonus provided under the Employment Agreement. Instead, defendants paid Dr. Best a bonus of only $56,000 with respect to 2004.

36.     On information and belief, defendants informed other employees with pre-Publicis agreements providing definite bonus formulas that such agreements would no longer be honored.

37.     In furtherance of the reorganization of BESTMED, on or about April 19, 2005, Ms. Szyper invited Dr. Best to a meeting with Susan Brocaglia, the Human Resources Director for Publicis Healthcare.

38.     At this meeting, Ms. Szyper stated that Publicis had decided to terminate Dr. Best.

39.     In response to Dr. Best's questioning about the reasons for the termination, Ms. Szyper attempted to offer several pretextual reasons for his termination.  Nevertheless, Ms. Szyper stated that BESTMED would couch the termination as a resignation.

40.     Dr. Best asked whether he was free to compete with defendants upon his termination.  Susan Brocaglia informed Dr. Best that he was not prohibited from competing with defendants after his termination.

41.     On or about April 19, 2005, defendants presented Dr. Best with an agreement entitled "Separation Agreement, Waiver and Release" marked "VERY CONFIDENTIAL" (the "Separation Agreement").

42.     Dr. Best rejected the Separation Agreement.

43.     BESTMED continued to employ Dr. Best and compensate him through May 10, 2005.

44.     After his termination, defendants caused an 8 1/2  X 11 inch picture of Dr. Best to be posted at the concierge's desk in the lobby of 345 Hudson Street with the word "TERMINATED" printed on it, visible to anyone entering or exiting the building.

45.     Since terminating Dr. Best, defendants have failed and refused to pay Dr. Best several categories of compensation owing to him, as set forth below:

Failure to Pay Commission's Under the MSL Agreement

46.     In or around late 2004, Dr. Best originated a contract with Berlex, Inc. which, on information and belief, has generated approximately $1 million in revenues.

47.     Pursuant to the MSL Agreement, Dr. Best is entitled to a 1% commission with respect to business obtained from Berlex, Inc., i.e., approximately $10,000.

Failure to Reimburse Expenses and Late Fees

48.     Prior to his termination, Dr. Best had incurred and paid out of his personal funds $118,208.21 on behalf of defendants and their affiliates in connection with the performance of his services under the Employment Agreement, and in support of the services by defendants and their affiliates.

49.     Dr. Best duly submitted receipts and other back-up for such business expenses.

50.     Upon information and belief, BESTMED billed clients for such expenses and such clients have paid such bills.

51.     Moreover, Dr. Best has incurred interest and late fees in the amount of $1,370 on account of defendants' failure to reimburse him for these expenses.

- 10 -

Failure to Pay Earned Bonus

52.    Pursuant to the Employment Agreement, Dr. Best has earned and is entitled to bonuses based upon BESTMED's total revenues for calendar years 2004 and 2005.

53.    On information and belief, based upon estimates of BESTMED's revenues for 2004 and what they would have been but for defendants' wrongful diversion of business away from BESTMED, Dr. Best was entitled to receive a total bonus under the Employment Agreement of at least $350,000. Taking account of the $56,000 bonus that defendants paid to Dr. Best for 2004, Dr. Best is still owed in excess of $300,000, no part of which has been paid.

54.    On information and belief, based upon estimates of BESTMED's expected revenues for 2005, Dr. Best will be entitled to receive a bonus under the Employment Agreement in excess of $350,000, no part of which has been paid.

Failure to Pay for Unused Vacation Days

55.    Under the Employment Agreement, Dr. Best is entitled to four weeks of vacation a year.

56.    Dr. Best was employed at BESTMED through May 10, 2005.

57.    Therefore, Dr. Best is entitled to payment for eight unused vacation days for 2005, totaling $10,400.

Failure to Pay Severance

58.    The Severance Plan became effective on January 1, 1993 and remained in effect at all times until Dr. Best's termination by BESTMED.

59.    Under the terms of the Severance Plan, Dr. Best is eligible to receive severance payments unless his employment is terminated for certain enumerated reasons

including (1) voluntary resignation by the employee; (2) refusal to accept a transfer or alternative employment; or (3) termination for cause.

60.     Dr. Best's employment with BESTMED was not terminated for any of the enumerated reasons disqualifying him from eligibility for severance payments.

61.     As alleged herein, Dr. Best's involuntary termination was not for cause as Dr. Best's performance was always outstanding.  Moreover, Dr. Best's termination came during, and appears to have been a result of, defendants' major restructuring and downsizing of BESTMED.

62.     The Severance Plan sets forth a formula for calculating the amount of severance payments payable to an employee.  Such formula takes into account length of employment, level of employment upon termination, weekly base salary upon the date of termination and whether or not the terminated employee executed a separation and release agreement.

63.     Pursuant to the terms of the Severance Plan, Dr. Best was eligible to receive a "Basic Benefit" of 1.5 times his weekly salary for each of his 17 years of service in the event that he did not sign a separation and release agreement.  At the time of his termination, Dr. Best's weekly salary was $5,641.34.  Dr. Best has not signed a separation and release agreement. Dr. Best, therefore, is entitled to receive approximately $143,854 under the Severance Plan.

64.     Dr. Best has made a written demand for payment under the Severance Plan.

65.     The Severance Plan provides that if a claim under the Severance Plan is denied, Saatchi & Saatchi North America, as Plan Administrator, will provide written notice of

- 12 -

the reasons for the denial. To date, Saatchi & Saatchi North America has failed to make any payments under the Severance Plan and has failed to provide Dr. Best the required written notice setting forth reasons for any denial.

66.     On information and belief, the Plan Administrator has not made any independent or reasoned determination regarding Mr. Best's elegibility for severance payments.

67.     On information and belief, the Plan Administrator has ignored the fiduciary duties that it owes under the Severance Plan to make a reasoned decision regarding Dr. Best's eligibility for severance payments.

### Defendants Continue Wrongfully to Utilize the BESTMED Trademark and Tradename After Dr. Best's Termination

68.     Following Dr. Best's termination, defendants have continued to use the BESTMED trademark and tradename in a manner that is likely to cause confusion among customers about the relationship between BESTMED and Dr. Best.

69.     Defendants have continued to use BESTMED's name on corporate stationary, continue to maintain the BESTMED.com website (which, as of the date of this Complaint, continues to state that Dr. Best is President of BESTMED); continue to use the BESTMED name and trademark on various billing and expense correspondence with customers, and continue to identify themselves as BESTMED in responding to telephone inquiries.

### AS AND FOR A FIRST CLAIM FOR RELIEF
(against Saatchi & Saatchi for Breach of Contract)

70.     Dr. Best repeats and realleges each and every allegation contained in paragraphs 1 through 69 of the complaint as if fully set forth herein.

71.     Dr. Best fully performed under the Employment Agreement.

72.     Saatchi & Saatchi has breached the Employment Agreement by failing to pay to Dr. Best the monies owed him under the Employment Agreement.

73.     As a direct and proximate result of Saatchi & Saatchi's breach of the Employment Agreement, Dr. Best has been damaged in an amount in excess of $700,000.

<u>AS AND FOR A SECOND CLAIM FOR RELIEF</u>
(for a declaratory judgment pursuant to 28 U.S.C. § 2201 against Saatchi & Saatchi declaring and determining Dr. Best's right under the Employment Agreement to receive a bonus attributable to 2005 revenues)

74.     Dr. Best repeats and realleges each and every allegation contained in paragraphs 1 through 73 of the complaint as if fully set forth herein.

75.     The Employment Agreement requires Saatchi & Saatchi to pay Dr. Best a bonus with respect to any fiscal year in which Dr. Best is terminated without cause.

76.     Dr. Best's termination in 2005 was without cause.  Saatchi & Saatchi will be required to pay Dr. Best a bonus with respect to 2005.

77.     By this action, Dr. Best seeks a declaratory judgment declaring and determining Dr. Best's entitlement to receive a bonus attributable to 2005 in an amount to be determined at trial.

<u>AS AND FOR A THIRD CLAIM FOR RELIEF</u>
(against BESTMED, Saatchi & Saatchi and Publicis Healthcare for Unjust Enrichment)

78.     Dr. Best repeats and realleges each and every allegation contained in paragraphs 1 through 77 of this complaint as if fully set forth herein.

79.     During 2004 and prior to his termination, BESTMED employed Dr. Best, who performed his duties adequately and competently.

- 14 -

80.    BESTMED, Saatchi & Saatchi and Publicis Healthcare benefited from Dr. Best's employment above and beyond the compensation that Dr. Best was paid for his work during such period.

81.    Moreover, prior to his termination, Dr. Best incurred and paid out of his personal funds, $118,208.21 for the benefit of BESTMED, Saatchi & Saatchi and Publicis Healthcare in connection with the performance of his duties, as aforesaid, and for the benefit of BESTMED, Saatchi & Saatchi and Publicis Healthcare in support of the services rendered by them and their affiliated companies.

82.    Dr. Best duly submitted receipts and other back-up for such business expenses.

83.    Upon information and belief, BESTMED, Saatchi & Saatchi and Publicis Healthcare billed clients for such expenses and such clients have paid such bills.

84.    Moreover, Dr. Best has incurred interest and late fees in the amount of $1,370 on account of BESTMED's, Saatchi & Saatchi's and Publicis Healthcare's failure to reimburse him for these expenses.

85.    It is unjust and inequitable that BESTMED, Publicis Healthcare and/or Saatchi & Saatchi have so benefited from Dr. Best's performance of his duties and payment of expenses without compensating him and reimbursing him therefore.

86.    As a result of the foregoing, BESTMED, Publicis Healthcare and/or Saatchi & Saatchi have been unjustly enriched, and Dr. Best should be compensated, in an amount not less than $800,000 and to be more precisely determined at trial.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
(against Saatchi & Saatchi North America for violation of 19 U.S.C. 1132(a)(1)(B))

87. Dr. Best repeats and realleges each and every allegation contained in paragraphs 1 through 86 of this complaint as if fully set forth herein.

88. The Severance Plan is an employee welfare benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA"). The Severance Plan expressly provides that it is subject to ERISA and that participants covered by the Severance Plan may enforce their rights in federal court. The Severance Plan states that the court may award such participant costs and attorneys' fees expended in successfully bringing such suit.

89. By reason of the foregoing, Saatchi & Saatchi North America is liable to Dr. Best under 29 U.S.C. § 1132(a)(1)(B) for Saatchi's arbitrary and capricious failure to pay all amounts owing to Dr. Best under Severance Plan.

90. Saatchi & Saatchi North America is also liable to Dr. Best under 29 U.S.C. § 1132(g)(1) for an amount to be determined at trial representing the attorneys' fees and costs incurred by Dr. Best in bringing the present action.

91. As a direct and proximate result of Saatchi & Saatchi North America's breach of the Severance Agreement in violation of 29 U.S.C. § 1132(a)(1)(B), Dr. Best has been damaged in an amount to be determined at trial but believed to be in excess of $200,000.

## AS AND FOR A FIFTH CLAIM FOR RELIEF
(against defendants for violation of 15 U.S.C. §§ 1125(a) and 1125(c))

92. Dr. Best repeats and realleges each and every allegation contained in paragraphs 1 through 91 of this complaint as if fully set forth herein.

93. Defendants' continued use of the BESTMED trademark and tradename infringes on Dr. Best's interest in the BESTMED trademark and tradename and is likely to cause confusion among customers as to the relationship between Dr. Best and BESTMED and to cause harm to Dr. Best's established professional reputation in violation of the federal trademark laws.

94. By this action, Dr. Best seeks to enjoin defendants from continuing to use the BESTMED trademark or tradename and seeks to recover damages relating to defendants improper and infringing use of the BESTMED trademark and tradename in an amount to be determined at trial.

<u>AS AND FOR A SIXTH CLAIM FOR RELIEF</u>
(against defendants for violation of N.Y. Civil Rights Law § 51)

95. Dr. Best repeats and realleges each and every allegation contained in paragraphs 1 through 94 of this complaint as if fully set forth herein.

96. Defendants' continued use of the BESTMED name infringes Dr. Best's continuing interest in limiting the unauthorized commercial use of his good name in violation of New York's Civil Rights Law.

97. By this action, Dr. Best seeks to enjoin defendants from continuing to use the BESTMED name and seeks to recover damages relating to defendants improper and infringing use of the BESTMED name in an amount to be determined at trial.

WHEREFORE, Dr. Best respectfully demands judgment as follows:

(a) On his First Claim for Relief, against Saatchi & Saatchi, damages in an amount in excess of $800,000 to be determined at trial.

(b) On his Second Claim for Relief, against Saatchi & Saatchi,

- 17 -

declaratory judgment determining and declaring Dr. Best's right to receive a bonus payment attributable to 2005 revenues.

        (c)     On his Third Claim for Relief, against BESTMED, Saatchi & Saatchi and Publicis Healthcare, damages in an amount in excess of $800,000 to be determined at trial.

        (d)     On his Fourth Claim for Relief, against Saatchi & Saatchi North America, damages in an amount in excess of $200,000 to be determined at trial.

        (e)     On his Fifth Claim for Relief, against all defendants, an injunction prohibiting the further use of the trademark or tradename BESTMED and for damages in an amount to be determined at trial.

        (f)     On his Sixth Claim for Relief, against all defendants, an injunction prohibiting the further use of the name BESTMED and for damages in an amount to be determined at trial.

        (g)     For attorneys' fees and costs attributable to this action in an amount to be determined at trial.

        (h)     For such other and further relief as the Court deems just and proper.

Dated: New York, New York
       August 19, 2005

ROTTENBERG LIPMAN RICH, P.C.

By:   Harry W. Lipman (HL-4207)
       Thomas Chase (TC-8266)

369 Lexington Avenue, Fifteenth Floor
New York, New York 10017

Attorneys for Plaintiff, Dr. David Best

- 18 -